UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CLIFTON COOK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:25-cv-05238 |
| | § | |
| EQUIFAX INFORMATION SERVICES, LLC, | § § | |
| | § | |
| Defendant. | § | |

**DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT
AND MEMORANDUM IN SUPPORT**

Defendant Equifax Information Services, LLC ("Equifax"), by counsel, hereby submits its Motion to Dismiss Plaintiff's Complaint and Memorandum in Support (the "Motion").

The Motion should be granted in this alleged Fair Credit Reporting Act ("FCRA") case where *Pro Se* Plaintiff vaguely claims that Equifax violated the FCRA by providing a consumer disclosure with truncated account numbers and other alleged "omissions" because:

    A.    Plaintiff fails to state a claim under FCRA Section 1681g;

    B.    Plaintiff fails to allege any concrete harm; and

    C.    Plaintiff fails to allege any willful violation of the FCRA.

## I.    INTRODUCTION

*Pro Se* Plaintiff's claims fail as a matter of law. Section 1681g of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") requires consumer reporting agencies to disclose the information in a consumer's file at the time of the request. It does ***not*** obligate CRAs to manufacture information that does not exist, populate blank fields, or provide data that has never been furnished to them. Here, Plaintiff seeks to convert Section 1681g into an unlimited disclosure

286668941.v1

mandate that every conceivable field be filled for every account, even where such data does not exist or does not apply. Plaintiff's claims rest on an implausible legal theory and conclusory allegations of willfulness. The law does not recognize such claims. For these reasons, the Complaint should be dismissed, with prejudice.

## II.   STANDARD

A court has authority to dismiss a suit for failure to state a claim upon which relief can be granted if the complaint clearly demonstrates that the plaintiff cannot prove any set of facts that would entitle it to relief. *Hishon v. King & Spalding*, 467 U.S. 69 (1984); *Power Entm't, Inc. v. Nat'l Football League Prop, Inc.*, 151 F.3d 247 (5th Cir. 1998). The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "It [Federal Rules] requires the plaintiff to articulate facts, when accepted as true, that "show" that the plaintiff has stated a claim entitling him to relief, i.e., the plausibility of 'entitlement to relief.'" *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007).

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). A "plausible claim for relief" is one where the claimant pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Such a claim "asks for more than a sheer possibility that a defendant has acted unlawfully," and requires more than the assertion of facts "that are 'merely consistent' with a defendant's liability." *Id.* When considering a motion to dismiss for failure to state a claim, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (internal quotation omitted);

*Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003) (same). In other words, a plaintiff must plead a "plausible claim for relief" – one where the claim affirmatively shows "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Indeed, a plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" to survive a motion to dismiss. *Id.*

### III.  ARGUMENT

**A.  Plaintiff's Claims Do Not Involve Information Bearing on "Creditworthiness" and Thus Are Not Actionable Under § 1681g.**

Plaintiff alleges that, in the consumer disclosure Equifax undisputedly provided upon his request, Equifax "omitted the full [a]ccount [n]umbers, [m]issing [a]ccount [i]nformation and [p]ayment [h]istory" on some accounts in violation of Section 1681g of the FCRA. *See* ECF No. 1, ¶ 12. But Equifax has no duty to provide Plaintiff with this information, as courts have routinely found such information does not bear on creditworthiness and have granted consumer reporting agencies' motions to dismiss plaintiffs' § 1681g claims under similar circumstances. *See Gordon v. Equifax Info. Servs. LLC*, No. 25-CV-21831, 2025 WL 2765236, at *4 (S.D. Fla. Sept. 29, 2025) (granting Equifax's motion to dismiss Plaintiff's § 1681g claim and holding that "[i]t is unclear whether Gordon seeks to claim that each account contains inaccurate information, and, more importantly, how the report is inaccurate. … Accordingly, the Court finds that Gordon has not satisfied her initial burden to allege an inaccuracy in Equifax's reporting); *Mott v. Transunion LLC*, No. 2:25-CV-10113, 2025 WL 1933950, at *2 (E.D. Mich. July 14, 2025) (granting Transunion's motion to dismiss Plaintiff's § 1681g claim and holding that "Plaintiff did not identify or allege any specific omissions in the report. … Specifically, Plaintiff presumes that her file contains inaccurate information—without identifying any—and thus concludes that Defendant must have failed to fully disclose her file.").

3

The FCRA, specifically 15 U.S.C. § 1681g, requires consumer reporting agencies ("CRAs"), such as Equifax, to disclose certain information in a consumer's file upon a consumer's request. A credit "file" for purposes of § 1681g means "information included **in a consumer report**," but does not include every piece of information that a consumer reporting agency has on a consumer. *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 910 (7th Cir. 2007) (emphasis supplied); *Wimberly v. Experian Info. Sols., Inc.*, 2019 U.S. Dist. LEXIS 218104, at *24 (S.D.N.Y. Dec. 17, 2019) (discussing the expansive and narrow definitions of "file" and expanding *Gillespie*, holding that internal record relating to a CRA's processing of information are not a part of the "file"); *see also Shaw v. Experian Info. Solutions, Inc.*, 891 F.3d 749, 761 (9th Cir. 2018). The FCRA defines the term "consumer report" to mean "any written, oral, or other communication of any information by a consumer reporting agency **bearing on a consumer's credit worthiness** . . . which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit." 15 U.S.C. § 1681a(d)(1)(A)) (emphasis supplied).

Information that does not bear on a consumer's creditworthiness is not actionable under the FCRA. *See e.g.*, *Heagerty v. Equifax Info. Servs. LLC*, 447 F. Supp. 3d 1328, 1339 (N.D. Ga. 2020) (holding that data bearing on a consumer's creditworthiness constituted a "consumer report" under the FCRA); *Perez v. Experian*, No. 20-CV-9119 (PAE) (JLC), 2021 U.S. Dist. LEXIS 198281, 2021 WL 4784280, at *9 (S.D.N.Y. Oct. 14, 2021), *report and recommendation adopted,* 2021 U.S. Dist. LEXIS 211987, 2021 WL 5088036 (S.D.N.Y. Nov. 2, 2021) ("[Plaintiff's] allegations regarding his address changes and gender do not state a claim for inaccurate information under the FCRA as a matter of law."); *see Ali v. Vikar Management, Ltd*., 994 F. Supp. 492, 497 (S.D.N.Y. 1998) ("[N]o restriction is put on the use of information that is not a 'consumer

report' … Address information on a consumer, for example, is not a consumer report because it is not information that bears on any of the characteristics described in 15 U.S.C. § 1681a(d)(1)."); *Williams-Steele v. Trans Union,* No. 12-CV-0310 (GBD) (JCF), 2015 U.S. Dist. LEXIS 16678, 2015 WL 576714, at *2 (S.D.N.Y. Feb. 10, 2015), *aff'd sub nom. Williams-Steele v. TransUnion,* 642 F. App'x 72 (2d Cir. 2016) ("the correct reporting of Plaintiff's telephone number and additional address has no bearing on Plaintiff's credit worthiness or eligibility for credit, and therefore the alleged inaccuracies are not actionable"); *see also Cortez v. Trans Union*, 617 F.3d 688, 711-12 (3d Cir. 2010) (analyzing *Gillespie* and noting that actionable information must be more than purely internal or record-keeping).

### 1.  Account Number

In the instant matter, Plaintiff first alleges that Equifax somehow violated the FCRA by "omit[ing] full [a]ccount [n]umbers" in a consumer file it sent to the Plaintiff. *See* ECF No. 1 ¶ 12. These claims are meritless. One district court has found that in some situations scrambling or truncating a consumer's account number is reasonable as a matter of law. *Whitaker v. Trans Union Corp.*, No. CV 03-2551-GTV, 2005 WL 8160827, at *20 (D. Kan. Feb. 3, 2005) ("the court determines that, as a matter of law, scrambling or truncating a consumer's account number is a reasonable procedure to protect the consumer's information from potential identity theft. The possibility of holding a credit reporting agency liable for reporting a scrambled or truncated account number that a creditor furnished would lead to absurd results …"). And another district recently specifically found this applies to redacting account numbers. *Walker v. Equifax*, No. 1:21-CV-01045-ELR, 2024 U.S. Dist. LEXIS 210523, at *16 (N.D. Ga. Sept. 23, 2024) ("Plaintiff offered no evidence that his credit report actually contained inaccurate or incomplete

5

information … regarding the disputed accounts … because the account numbers on his credit report simply were not listed in full") (cleaned up).

While maintaining that truncating account numbers is a reasonable policy, Equifax requests dismissal of Plaintiff's claims because under the FCRA, to qualify as a consumer report, the information contained therein **must bear on an individual's <u>creditworthiness</u>**, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living. 15 U.S.C. § 1681a (emphasis added.) The missing digits of truncated account numbers do not qualify as information that bears any impact on the aforementioned. *See Whitaker v. Trans Union Corp.*, No. 03-2551-GTV, 2005 U.S. Dist. LEXIS 51531, at *61 (D. Kan. Feb. 3, 2005); *Walker v. Equifax Info. Sols., LLC*, No. 1:21-CV-01045-ELR, 2024 U.S. Dist. LEXIS 210523, at *16 (N.D. Ga. Sept. 23, 2024). Notably, while Plaintiff alleges that the account numbers were truncated, he does not allege that other unique information was omitted that could have helped him identify the accounts such as account name, scheduled payment amount, status, account type, credit limit, and balance. *See* ECF No. 1 generally. This is not a situation where no account numbers were included on a consumer report. *Id.* Even accepting Plaintiff's allegations as true, the Complaint fails to state a claim upon which relief can be granted since the FCRA does not mandate disclosure of full account numbers. *See Whitaker v. Trans Union Corp.*, No. 03-2551-GTV, 2005 U.S. Dist. LEXIS 51531, at *61 (D. Kan. Feb. 3, 2005); *Walker v. Equifax Info. Sols., LLC*, No. 1:21-CV-01045-ELR, 2024 U.S. Dist. LEXIS 210523, at *16 (N.D. Ga. Sep. 23, 2024).

### 2.     Incomplete Historical Payment and Balance Information

Next, Plaintiff alleges that the disclosure that Equifax undisputedly provided was "[m]issing [a]ccount [i]nformation and [p]ayment [h]istory" on some accounts contained in his credit file. *See* ECF No. 1, ¶ 12. This is not an actionable inaccuracy. Plaintiff's allegations that

286668941.v1

his credit report is incomplete because the entirety of the missing account information and payment history are not included for certain accounts, Plaintiff has not plausibly alleged that the reported information is inaccurate or misleading. For example, Plaintiff notes that several sections of the tradelines for US Bank, Capital One Bank USA NA, JPMCB Card Servies, Syncb/Sams Club DC Syncb/Lowes, and SCA/Robbins Bros account's are "incomplete." Id. at ¶¶ 13-19. However, "'[CRAs] are not required to include all existing or derogatory or favorable information about a consumer in their reports.'" *Davis v. Equifax Info. Servs., LLC*, 346 F. Supp. 2d 1164, 1172 (N.D. Ala. 2004) (citations omitted). Further, the omission of credit information does not make a credit report inaccurate or misleading because "[b]usinesses relying on credit reports have no reason to believe that a credit report reflects all relevant information on a consumer. Indeed, such a requirement would be impossible for a CRA to satisfy, as creditors furnish CRAs with consumer information only on a voluntary basis." *Hammer v. Equifax Info. Servs., L.L.C.*, 974 F.3d 564, 568 (5th Cir. 2020). *See Harris v. Trans Union LLC*, No. 1:25-cv-192-MLB-JKL, 2025 U.S. Dist. LEXIS 98701*, at *19 (N.D. Ga. May 23, 2025) (rejecting Plaintiff's FCRA claims premised on omission of a full payment history, finding "the lack of a comprehensive account or payment history is of no matter when the report, viewed as a whole, does not mislead the user about the status of the account."); *see also Gordon v. Equifax Info. Servs. LLC*, No. 25-CV-21831, 2025 WL 2765236, at *4 (S.D. Fla. Sept. 29, 2025) (granting Equifax's motion to dismiss Plaintiff's § 1681g claim and holding that "[i]t is unclear whether Gordon seeks to claim that each account contains inaccurate information, and, more importantly, how the report is inaccurate. … Accordingly, the Court finds that Gordon has not satisfied her initial burden to allege an inaccuracy in Equifax's reporting); *see also Mott v. Transunion LLC*, No. 2:25-CV-10113, 2025 WL 1933950, at *2 (E.D. Mich. July 14, 2025) (granting Transunion's motion to dismiss Plaintiff's § 1681g claim and

7

holding that "Plaintiff did not identify or allege any specific omissions in the report… Specifically, Plaintiff presumes that her file contains inaccurate information—without identifying any—and thus concludes that Defendant must have failed to fully disclose her file.").

Further, in the instances where Plaintiff has alleged incompleteness, his credit report explicitly indicates that such data is not available to Defendant. *See Id.* at Ex. A, p. 5, 8, 9, 10, 12, 16, 18 (where each claim of "missing information" is actually identified in the credit report key as "No Data Available"). It is not plausible that this lack of information is inaccurate or misleading, particularly where it is readily apparent from Plaintiff's consumer report that the information is not available to Defendant. In the absence of plausible allegations that the omission of certain account information is factually incorrect or misleading, Plaintiff has, again, not alleged an actionable inaccuracy on his credit report.

**B.      Plaintiff Lacks Article III Standing.**

    **1.      Legal standard under Fed. R. Civ. P. 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges subject matter jurisdiction. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute. . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) (quotations omitted). Article III of the U.S. Constitution limits the judicial power of the federal courts to actual "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. To invoke this power, a litigant must have standing, *Hollingsworth v. Perry*, 570 U.S. 693 (2013), and the plaintiff bears the burden of proving standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo v. Robinson*, 136 S. Ct. 1540, 1547 (2016). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id*.

The "irreducible constitutional minimum" of standing consists of three elements. *Lujan*, 504 U.S. at 560. The plaintiff must prove (1) an injury in fact (2) fairly traceable to the challenged conduct (3) that is likely to be "redressed by a favorable judicial decision." *Hollingsworth*, 570 U.S. at 704. Relevant here, an injury in fact requires "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted); *Spokeo*, 136 S. Ct. at 1545 ("[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both concrete and particularized"). "[A] 'concrete' injury must be 'de facto'; that is, it must actually exist" in a "'real,' and not 'abstract'" sense. *Spokeo*, 136 S. Ct. at 1548.

"Injury in fact is a constitutional requirement, and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id*. at 1547–48 (citation and internal quotation marks omitted); *see Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 100 (1979) ("In no event . . . may Congress abrogate the Art. III minima"). In other words, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549. *Spokeo* affirmed the standard already followed in the Fifth Circuit. *See, e.g., Deanda v. Becerra*, 96 F.4th 750, 755–56 (5th Cir. 2024) ("To have standing to sue in federal court, a plaintiff must show he has suffered an injury traceable to the defendant which the court's judgment would likely redress.").

**2.    Plaintiff Cannot Identify Any Injury-In-Fact Resulting from Equifax's Alleged Conduct**

Plaintiff has not alleged any "concrete and particularized" injury of the type required by Article III for this Court to maintain subject matter jurisdiction over Plaintiff's claims. *See* ECF No. 1 generally. Rather, Plaintiff's Complaint only includes the insufficient allegation that "[t]he lack of accurate, full account numbers, missing account information and payment history caused

9

[Plaintiff] great frustration and emotional distress when trying to understand his credit report and verify it against his own records." ECF No. 1, ¶ 31.

At bottom, Plaintiff's Complaint amounts to nothing more than an attempted "gotcha" claim commonly brought by pro se litigants and regularly rejected by the courts. *See*, *e.g.*, *Joseph v. Experian Info. Sols., Inc.*, No. 1:18-CV-03443-WMR-RGV, 2019 WL 5458009, at *8 (N.D. Ga. July 3, 2019), report and recommendation adopted, No. 1:18-CV-3443-WMR, 2019 WL 5460659 (N.D. Ga. Aug. 13, 2019) (collecting cases). Among other reasons, such claims have been dismissed for lack of standing. *See id*. at *3-5. After reiterating that the "Supreme Court has emphasized that Article III standing requires a concrete injury even in the context of a statutory violation," the *Joseph* court held that "a technical impairment of a consumer's ability to monitor a credit report or file that carries no actual consequences for the consumer does not rise to the level of an Article III injury, even an Article III intangible injury, and leaves the Court with a bare procedural violation, attenuated from any real harm or imminent risk of harm, that Congress cannot convert into Article III standing." *Id*. at *5 (internal quotations and citations omitted); *see also Whiteford v. Equifax Inc.*, No. CV 2:21-CV-94, 2021 WL 3683293, at *4 (W.D. Pa. Aug. 18, 2021) ("Since [plaintiff] has identified no discrepancies of merit, the Court finds that [he] has not shown a concrete injury."); *Dawkins v. Experian Info. Sols., Inc.*, No. 6:22-CV-00774T-MCJDA, 2022 WL 17668425, at *4, 6 (D.S.C. Oct. 19, 2022), *report and recommendation adopted*, No. 6:22-CV-774-TMC, 2022 WL 17351761 (D.S.C. Dec. 1, 2022) (dismissing action where Plaintiff "failed to allege facts to show a concrete injury" and "fail[ed] to present allegations to show that any of the[] four reports generated by Defendant and provided to Plaintiff [did] not constitute his full consumer credit file.").

**C.     Plaintiff's Willfulness Claim Fails as a Matter of Law.**

Even if the Court considers Plaintiff's willfulness claim, it fails as a matter of law because Plaintiff has not, and cannot, plead the required elements of a willfulness claim. Under such circumstances, willfulness claims may be properly dismissed on a 12(b)(6) or 12(c) motion. *See Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1282-83 (11th Cir. 2017). "Willfully" means either knowingly or with reckless disregard. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 58–59 (2007). To state a willfulness claim, Plaintiff must allege: (1) that Equifax had a practice or policy that was objectively unreasonable in light of the FCRA's statutory language; and (2) how Equifax ran a risk of violating the FCRA that was substantially greater than the risk associated with a reading that was merely careless. *Id.*; *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009).

Here, Plaintiff has unequivocally failed to plead his willfulness claim. Plaintiff must show that Equifax acted in a manner that made it highly probable harm would follow. *Safeco Ins. Co.*, 551 U.S. at 69. Where the statutory text and authoritative guidance allow for more than one reasonable interpretation, a defendant merely adopting one such interpretation cannot be found to have willfully violated the FCRA. *Id.* at 70 n.20. A CRA's interpretation of its obligations under the FCRA can be erroneous and still not be considered willful. *Id.* at 69-70. Stated another way, an interpretation that favors the agency must be "objectively unreasonable" under either the text of the Act or guidance from a court of appeals or regulatory authority that might have warned a defendant away from the view it took. *Levine*, 554 F.3d at 1318. Plaintiff has failed to identify a single practice or policy of Equifax that is objectively unreasonable. *See* ECF. No 1 generally. He merely argues, in general vagaries and conclusory statements, that Equifax's violations of the FCRA were "intentional." ECF. No 1, ¶ 42.

11

In this case, Plaintiff has not, and cannot, plead the required elements of a willfulness claim. Thus, Equifax's Motion to Dismiss should be granted in its favor on Plaintiff's willfulness claim be dismissed, with prejudice.

## IV. CONCLUSION

For the reasons set forth herein, Equifax respectfully requests the Court grant its Motion, dismiss Plaintiff's Complaint, and grant all other relief as the Court deems necessary.

Dated: February 25, 2026          Respectfully submitted,

By:  */s/ Forrest M. "Teo" Seger III*
**FORREST M. "TEO" SEGER III**
Texas Bar No. 24070587
Southern District Bar No. 125540
TSeger@clarkhill.com
CLARK HILL PLC
2301 Broadway St.
San Antonio, Texas 78215
(210) 250-6000
(210) 250-6100 (Fax)

**ATTORNEY FOR DEFENDANT,
EQUIFAX INFORMATION SERVICES LLC**

286668941.v1

**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2026, a true and correct copy of the foregoing *Defendant Equifax Information Services LLC's Motion to Dismiss Plaintiff's Complaint* was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

I further certify that on February 25, 2026, a true and correct copy of the foregoing *Defendant Equifax Information Services LLC's Motion to Dismiss Plaintiff's Complaint* was served on Pro Se Plaintiff, via United States Mail, first class postage prepaid, to the following address:

>Clifton Cook
>4219 Texana
>Baytown, TX 77523
>*Pro Se Plaintiff*

                 */s/ Forrest M. "Teo" Seger III*
                 Forrest M. "Teo" Seger III

286668941.v1