United States District Court
Southern District of Texas
**ENTERED**
July 19, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **CLIFTON COOK,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:25-cv-5238** |
| | § | |
| **EQUIFAX INFORMATION SERVICES, LLC,** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

# MEMORANDUM AND RECOMMENDATION

Pending before the Court[1] is Defendant Equifax Information Services, LLC's ("Equifax") Motion to Dismiss. (ECF No. 13). Based on a review of the motion, arguments, and relevant law, the Court **RECOMMENDS** Equifax's motion (*id.*) be **DENIED**.

## I. Background[2]

This case is about violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. 1681 *et seq*. (ECF No. 1). *Pro se* Plaintiff Clifton Cook ("Plaintiff") filed this action against Equifax on November 3, 2025. (*Id.*). Plaintiff alleges that, around September 2025, he "requested a copy of his consumer credit disclosure from Equifax," who was required to "disclose all information in [his]

---

[1] This case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (ECF No. 19).

[2] The Background section is based on the allegations made in Plaintiff's Complaint. (*See* ECF No. 1).

file." (*Id.* at 3). Equifax allegedly provided an electronic copy of Plaintiff's "Consumer Disclosure" to him through annualcreditreport.com; however, Equifax "omitted the full Account Numbers, Missing Account Information and Payment History relating to US Bank, Capital One Bank, [] JPMCB Card, Syncb/Sam Club, Syncb/Lowes, SCA/Robbins Bros trade lines." (*Id.*). In short, Plaintiff alleges the following information as to these accounts is incomplete or inaccurate: "Date Opened," "Date of Last Activity," "Scheduled Payment Amount," "Actual Payment Amount," "Term Duration," "Date Major Delinquency 1st Reported," "Date closed," "Date reported," "Credit Limit," "Months Reviewed," "Deferred Payment Start Date," "Balloon Payment Amount," "Balloon Payment Date," "Payment History," "In the 24 Month History," "Last Payment Date," "Past Due," and "High Credit." (*Id.* at 3–8). Plaintiff contends that the data furnishers "reported the full account numbers, missing account information and payment history belonging to its respective accounts to Equifax, and this information was contained within Equifax's file regarding [Plaintiff]." (*Id.* at 8).

According to Plaintiff, Equifax breached its duty under the FCRA "by failing to provide the full account numbers, missing account information and payment history." (*Id.* at 8–9). Plaintiff contends that "[d]ue to widespread systemic problems, Equifax's automated systems omits [sic] all but the last two

or four account numbers, missing account information and payment history reported by data furnishers" and that "Equifax knows of this error but, despite such knowledge, has yet to correct it." (*Id.* at 9, 11–12, 14). Plaintiff states Equifax's conduct was done knowingly and repeatedly, and its failure to disclose all the information in his credit file through free annual disclosures is an intentional violation of 15 U.S.C. § 1681g(a). (*Id.* at 12–13). Consequently, Plaintiff alleges this lack of information "caused [him] great frustration and emotional distress when trying to understand his credit report and verify it against his own records." (*Id.* at 10–11). For relief, Plaintiff seeks costs and actual, statutory, and punitive damages. (*Id.* at 14–15). Attached to the Complaint, among other things, is Plaintiff's Equifax Credit Report from September 2025. (ECF No. 1-1).

On February 25, 2026, Equifax moved to dismiss the Complaint, arguing Plaintiff fails to state a claim under Section 1681g, allege any concrete harm, and allege any willful violation of the FCRA. (ECF No. 13).

Plaintiff filed a response (ECF No. 14), Equifax filed a reply (ECF No. 15), and Plaintiff filed a sur-reply (ECF Nos. 18, 20, 22–23). Plaintiff also filed a notice of supplemental authority, citing *Caleb v. Equifax Info. Servs., LLC*, No. 4:26-cv-00197, Dkt. No. 24 (S.D. Tex. June 23, 2026) (Werlein, J.) (unpublished). (ECF No. 24).

## II. Legal Standard

### A. Rule 12(b)(6)[3]

Federal Rule of Civil Procedure ("Rule") 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss, a court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and rarely granted. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all

[3] Equifax also moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) because it argues Plaintiff fails to plead an injury-in-fact. (ECF No. 13 at 8–10). However, courts routinely find that plaintiffs have Article III standing in similar FCRA cases. *See Washington v. Cap. One Auto Fin.*, No. 26-cv-01267, 2026 WL 1495050, at *2 n.1 (S.D. Tex. May 28, 2026) (collecting cases). The Court thus concludes that Plaintiff has standing. *See infra* Part III.A.

reasonable inferences will be resolved in favor of a plaintiff, a plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994); *see also Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 669 (5th Cir. 2018) ("Although a complaint does not need detailed factual allegations, the allegations must be enough to raise a right to relief above the speculative level . . . .") (internal quotations omitted). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Firefighters' Ret. Sys.*, 894 F.3d at 669 (quoting *Iqbal*, 556 U.S. at 678). "The court is not required to conjure up unpled allegations or construe elaborately arcane scripts to save a complaint." *Santerre v. Agip Petroleum Co., Inc.*, 45 F. Supp. 2d 558, 568 (S.D. Tex. 1999) (internal quotations omitted).

To determine whether to grant a Rule 12(b)(6) motion, a court may only look to allegations in a complaint to determine their sufficiency. *Id.*; *Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *1 (E.D. Tex. Mar. 18, 2011). "A court may, however, also consider matters outside the four corners of a complaint if they are incorporated by reference, items subject to judicial notice, matters of public record, orders, items appearing in the record of a case, and exhibits attached to a complaint whose

authenticity is unquestioned." *Joubert on Behalf of Joubert v. City of Houston*, No. 4:22-cv-3750, 2024 WL 1560015, at *2 (S.D. Tex. Apr. 10, 2024).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted); *see also* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice").

**B. 15 U.S.C. § 1681**

Title 15 U.S.C. § 1681(b) requires "that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information[.]" The term "consumer report" means:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . [inter alia,] credit or insurance to be used primarily for personal, family, or household purposes.

*Id.* at § 1681a(d)(1)(A). The term "file," "when used in connection with information on any consumer, means all of the information on that consumer

recorded and retained by a consumer reporting agency regardless of how the information is stored." *Id.* at § 1681a(g).

Every consumer reporting agency shall, upon request, clearly and accurately disclose to the consumer: (1) all information in the consumer's file at the time of the request; (2) the sources of the information; (3) identification of each person that procured a consumer report; (4) the dates, original payees, and amounts of any checks upon which is based any adverse characterization of the consumer, included in the file at the time of the disclosure; (5) a record of all inquiries received by the agency during the 1-year period preceding the request that identified the consumer in connection with a credit or insurance transaction that was not initiated by the consumer; and (6) if the consumer requests the credit file and not the credit score, a statement that the consumer may request and obtain a credit score. *Id.* at § 1681g(a). "File" means information included in a consumer report and "denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer." *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909–10 (7th Cir. 2007) (citations omitted).

Any person who willfully fails to comply with any requirement with respect to any consumer is liable to that consumer in an amount equal to the

sum of: (1) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; (2) such amount of punitive damages as the court may allow; and (3) in the case of any successful action to impose liability, the costs of the action together with reasonable attorney's fees as determined by the court. 15 U.S.C. § 1681n.[4]

> [A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007). "[R]eckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a)." *Id.* at 71. An interpretation that favors the agency must be "objectively unreasonable" under either the text of the Act or "guidance from the courts of appeals or the Federal Trade Commission that might have warned [the agency] away from the view it took." *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009).

## III. Discussion

Equifax advances three arguments for dismissal. First, it contends Plaintiff lacks Article III standing because he alleges only a procedural

[4] Because Equifax does not move to dismiss Plaintiff's allegations of negligent noncompliance under 15 U.S.C. § 1681o—as opposed to willful noncompliance under 15 U.S.C. § 1681n—the Court does not address the issue.

violation of the FCRA and has not suffered a concrete injury. (ECF No. 13 at 8–10). Second, Equifax argues Plaintiff fails to state a claim under § 1681g(a)(1) because the allegedly omitted information does not bear on Plaintiff's creditworthiness, is not part of his "file" according to the statute, and is not inaccurate or misleading. (*Id.* at 3–8). Third, Equifax argues Plaintiff has failed to plead a willfulness claim. (*Id.* at 11–12). The Court addresses each argument in turn. The Court must first determine whether Plaintiff has standing before considering the merits of his claim. *See Tisdale v. Enhanced Recovery Co., LLC*, No. 4:22-cv-00286, 2023 WL 1810413, at *4–11 (E.D. Tex. Jan. 17, 2023), *report and recommendation adopted*, No. 4:22-cv-00286, 2023 WL 1802393 (E.D. Tex. Feb. 7, 2023); *Peters v. St. Joseph Services Corp.*, 74 F. Supp. 3d 847, 852 (S.D. Tex. 2015).

**A. Article III Standing**

Plaintiff has adequately alleged Article III standing. Article III limits the jurisdiction of federal courts to actual "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. For standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). The plaintiff bears the burden of establishing these elements. *Id.* At the

pleading stage, the plaintiff must clearly allege facts demonstrating each element. *Id.* Here, only the first element is disputed.

To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 339 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341. A plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* "This does not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness. . . . [T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Id.* at 341–42. "In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id.* at 342. The Court therefore asks "whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement." *Id.* at 342–43.

Equifax argues Plaintiff has not pleaded a concrete and particularized injury when he alleges that the lack of information caused him emotional

distress and rendered him unable to understand and verify his credit report. (ECF No. 13 at 9–10). The Court disagrees.

Plaintiff alleges Equifax failed to disclose several categories of information contained within his consumer file, including account numbers, payment histories, credit limits, dates of activity, and other tradeline information. (ECF No. 1 at 3–8). According to Plaintiff, this lack of information caused him "great frustration and emotional distress when trying to understand his credit report and verify it against his own records." (*Id.* at 10–11). This omission "decrease[d] [his] ability to understand his consumer credit disclosure, identify the accounts, and compare those accounts with his own records." (*Id.* at 11). Accepting these allegations as true, as the Court must at this stage, Plaintiff has alleged more than a mere procedural statutory violation.

Several courts considering nearly identical allegations under § 1681g have concluded such allegations sufficiently plead a concrete injury. In *Banks v. Equifax Information Services LLC*, the Court found the plaintiff sufficiently pleaded injury in fact where they alleged Equifax's disclosure failed to provide data necessary to research and evaluate the accuracy of the information contained in their credit file; the failure to provide accurate and truthful information as required by law created an injury-in-fact for Article III

standing; and the inaccurate disclosure caused her "great frustration and emotional distress." No. 5:25-cv-00111, 2026 WL 628973, at *3–5 (E.D. Tex. Feb. 9, 2026), *report and recommendation adopted*, No. 5:25-cv-00111, 2026 WL 627793 (E.D. Tex. Mar. 5, 2026). The *Banks* court noted that other circuit courts similarly found non-disclosure as a sufficiently concrete injury where it prevented the plaintiff from receiving fair and accurate reporting of their credit information or affected their ability to obtain the information they needed to cure or resolve their credit issues. *Id.* at *4 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 441 (2021); *Kelly v. RealPage Inc.*, 47 F.4th 202, 212, 214 (3d Cir. 2022); *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1100 (9th Cir. 2022); *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 347 (4th Cir. 2017)). In *Banks*, the plaintiff alleged that "Equifax's disclosure omitted full account numbers, account information, and payment history for nine specific accounts, hindering her ability to verify and understand her credit file," and she also alleged that "Equifax's violations of the FCRA caused her adverse effects in the form of at least great emotional distress." *Id.* at *4–5. The court thus concluded the plaintiff sufficiently alleged an injury in fact. *Id.* at *5 (recommending denial of Equifax's motion to dismiss the plaintiff's FCRA claims for lack of Article III standing). Likewise, in *Caleb v. Equifax Information Services, LLC*, the court rejected Equifax's standing challenge

where the plaintiff pleaded that he suffered "loss of credit, credit damage, damage to reputation, embarrassment, humiliation, and other emotional distress." No. 26-cv-00197, Dkt. No. 24 at 5 (S.D. Tex. June 23, 2026). The *Caleb* court concluded "these 'adverse effects' flowing from the alleged omission of information [were] sufficient to establish standing." *Id.* (citing *Banks*, 2026 WL 628973, at *4). Those decisions are consistent with appellate authority recognizing that an informational injury may satisfy Article III where the plaintiff alleges denial of information to which Congress entitled the consumer and the omission impaired the plaintiff's ability to use that information for the purposes Congress sought to protect. *See Kelly*, 47 F.4th at 214 ("[T]to state a cognizable informational injury a plaintiff must allege that 'they failed to receive . . . required information,' and that the omission led to 'adverse effects' or other 'downstream consequences,' . . . and such consequences have a nexus to the interest Congress sought to protect . . . .") (citation modified); *see also Tailford*, 26 F.4th at 1100 ("Where, as here, Congress has identified a concrete interest deserving of protection, a violation of procedure may demonstrate a sufficient 'risk of real harm' to the underlying interest to establish concrete injury without the 'need [to] allege any additional harm beyond the one Congress has identified.'" (citing *Spokeo, Inc.*, 578 U.S. at 341–42)).

Here, Plaintiff alleges precisely that. The FCRA grants consumers the right to obtain a disclosure of the information maintained in their consumer files. Plaintiff alleges the omission of specific account information prevented him from reviewing and verifying the accuracy of his credit information, thereby frustrating the statutory purpose of § 1681g. (ECF No. 1 at 3–8, 10–11). At the pleading stage, these allegations suffice to establish a concrete injury. As such, Equifax's motion should be denied insofar as it challenges Plaintiff's standing.

**B. Section 1681g Claim**

Plaintiff also plausibly states a claim under 15 U.S.C. § 1681g(a)(1). To start, 1681a provides the definitions and rules of construction applicable to the subchapter for credit reporting agencies. Section 1681a(d)(1) defines a "**consumer report**" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity[.]" (emphasis added). Section 1681a(g) separately defines a "**file**," "when used in connection with information on any consumer," as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." (emphasis added).

Section 1681g prescribes the rules for disclosures to consumers. As relevant here, § 1681g(a)(1) requires every consumer reporting agency, upon request, to "clearly and accurately disclose to the consumer . . . **[a]ll information** in the consumer's **file** at the time of the request[.]" (emphasis added).

Equifax argues Plaintiff fails to state a claim because the omitted information does not bear upon Plaintiff's "creditworthiness."[5] (ECF No. 15 at 1–2). In other words, Equifax interprets § 1681g(a)(1)'s "all information" provision as "limited to the credit report itself." (*Id.* at 1). According to Equifax, "a disclosure under §1681g does not have to include every piece of information in a consumer's file," despite the statute expressly requiring every consumer reporting agency to "disclose to the consumer . . . **[a]ll information** in the consumer's file." *See* 15 U.S.C. § 1681g(a)(1). Equifax seems to suggest the term "file" under § 1681g(a)(1), is limited to information that would qualify as a "consumer report" under § 1681a(d)(1), which includes only information bearing upon a consumer's "creditworthiness." Equifax therefore argues that the alleged omitted payment histories, account numbers, and similar

[5] Equifax thereby seems to indirectly allude to a different part of the statute—section 1681a(d)(1).

information cannot support liability under § 1681g. At this juncture, the Court declines to adopt Equifax's interpretation.

In this case, Plaintiff has adequately pleaded the elements required to state a § 1681g(a)(1) claim. Plaintiff alleges he requested a copy of his consumer credit disclosure from Equifax, who was required to disclose all information in his file. (ECF No. 1 at 3). Plaintiff further alleges Equifax provided a disclosure that omitted specific categories of information concerning several identified tradelines, including payment history, complete account numbers, dates of activity, credit limits, and other account information. (*Id.* at 3–8). Plaintiff also alleges that the cited data furnishers reported this information from their respective accounts to Equifax and that this information was contained within Equifax's file regarding Plaintiff. (*Id.* at 8). In turn, Plaintiff alleges when "Equifax produces and sells reports regarding [Plaintiff] to third parties, the full account numbers, missing account information[,] and payment history are included in its reports." (*Id.*). Plaintiff's allegations therefore identify the missing information with considerable specificity. The more difficult question is whether the allegedly omitted information falls within the statutory definition of Plaintiff's "file."

Equifax primarily relies on *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007), to argue that the scope of the term "file" under § 1681g(a)(1)

is limited to material included in a consumer report. While *Gillespie* recognized that a consumer's file denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report, that decision addressed whether an internal "purge date" constituted part of the consumer's file. *Id.* at 908–09. *Gillespie* did not involve allegedly omitted account information, payment histories, or tradeline information of the sort alleged here. *See also Banks*, 2026 WL 628973, at *6 ("*Gillespie* . . . addressed whether a consumer's 'file' included the purge date . . . which is an internal record keeping mechanism, different from a plaintiff's account information or payment history."). Neither the Supreme Court nor the Fifth Circuit has adopted the narrow interpretation urged by Equifax.

Recent district court cases considering similar allegations, however, have largely declined to dismiss § 1681g claims at the pleading stage. *See Caleb*, No. 26-cv-00197, Dkt. No. 24 at 8–9 (denying Equifax's motion to dismiss § 1681g claim, where the plaintiff asserted allegations identifying specific omitted tradeline information allegedly contained in Equifax's file); *Banks*, 2026 WL 628973, at *5–8 (recommending denial of Equifax's motion to dismiss § 1681g claim, where the plaintiff alleged that Equifax omitted full account numbers, account information, and payment history from her

consumer disclosure); *Stafford v. Trans Union, LLC*, No. 4:25-cv-00921, 2025 WL 4648412, at *3–4 (E.D. Tex. Nov. 17, 2025), *report and recommendation adopted*, No. 4:25-cv-921, 2026 WL 526695 (E.D. Tex. Feb. 25, 2026) (recommending denial of Equifax's motion to dismiss § 1681g claim, where the plaintiff alleged that the disclosures he received omitted full account numbers, account information, and payment history for numerous tradelines); *see also Hardin v. Equifax Info. Servs. LLC*, No. 25-cv-1374, Dkt. No. 15 at 1–3 (W.D. Okla. Jan. 14, 2026) (denying Equifax's motion to dismiss § 1681g claim, where the plaintiff alleged his consumer credit disclosure omitted full account numbers, missing account information, and payment history with respect to certain trade lines); *Watkins v. Equifax Info. Servs. LLC*, No. 1:25-cv-524, 2025 WL 3763869, at *1, *4–6 (S.D. Ohio Dec. 30, 2025) (denying Equifax's motion to dismiss § 1681g claim, where the plaintiff alleged Equifax failed to include complete numbers associated with the various financial accounts noted in his disclosure file); *Blevins v. Equifax Info. Servs. LLC*, No. 25-cv-23481, 2025 WL 3753990, at *1–3 (S.D. Fla. Dec. 29, 2025) (denying Equifax's motion for judgment on the pleadings based on failure to state a claim, where the plaintiff alleged she requested a copy of her credit report and Equifax failed to provide a clear and accurate disclosure of all the information in her file, including full account numbers and original creditor names); *Maude v. Equifax Info. Servs.*

*LLC*, No. 25-cv-61421, Dkt. No. 17 at 1–2, 5–7 (S.D. Fl. Nov. 11, 2025) (denying Equifax's motion to dismiss § 1681g claim, where the plaintiff alleged she requested her consumer credit disclosure and Equifax provided an incomplete report, including missing full account numbers, other account information, and a payment history regarding twelve accounts). In coming to these dispositions, the courts emphasized the broad statutory definition of "file" contained in § 1681a(g) and the distinction between a consumer's "file" and a "consumer report." The Court finds the reasoning of these decisions persuasive.

Congress separately defined "consumer report" and "file." *Compare* 15 U.S.C. § 1681a(d) *with* § 1681a(g). Additionally, § 1681g(a)(1) requires disclosure of "all information" contained within the consumer's "file," not merely information contained within a "consumer report." At a minimum, the statutory language leaves room for Plaintiff's interpretation.

The Court also is not persuaded that the omitted information necessarily lacks any connection to Plaintiff's "creditworthiness." At the pleading stage, it is reasonable to infer that creditors could use payment history, account history, and related tradeline information in evaluating Plaintiff's credit profile. *See Banks*, 2026 WL 628973, at *6 ("Factually, Equifax's arguments fail because Plaintiff's allegations regarding the missing information *would* plausibly bear on a consumer's creditworthiness.") (emphasis in original); *Stafford*, 2025 WL

4648412, at *4 (assuming Equifax's "narrower interpretation" regarding creditworthiness applied and holding the omission of payment history on tradelines would bear on creditworthiness); *Maude*, No. 25-cv-61421, Dkt. No. 17 at 7 (noting the reasonable inference that a creditor might use the alleged missing account numbers, account information, and payment history to evaluate a consumer's creditworthiness). Whether that information ultimately falls within the scope of § 1681g presents a question better addressed upon a fuller record.

Equifax's remaining arguments ask the Court to reject Plaintiff's allegations that the omitted information existed within Equifax's files or that the information was reported to third parties. However, those factual disputes cannot be resolved under Rule 12(b)(6). At this stage, the Court must accept Plaintiff's allegations as true. *See Caleb*, No. 26-cv-00197, Dkt. No. 24 at 8 ("These [FCRA] allegations are sufficient at the pleading stage to survive [Equifax's] motion to dismiss." (citing, inter alia, *Stafford*, 2025 WL 4648412, at *4 ("[T]he court must take Plaintiff's allegations as true, which, when construed liberally, suggest that the omission of the tradelines was misleading."))).

Accordingly, Plaintiff has plausibly alleged that Equifax failed to disclose information contained within his consumer file in violation of § 1681g(a)(1).

**C. Willfulness**

Finally, Equifax argues Plaintiff has failed to plead a willful violation of the FCRA. (ECF No. 13 at 11–12). "[W]here willfulness is a statutory condition of civil liability," it "cover[s] not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. Co.*, 551 U.S. at 57. "Generally, courts have allowed a willful noncompliance claim to proceed where a defendant's conduct involves willful misrepresentations or concealments. . . . In those cases, a consumer reporting agency has typically misrepresented or concealed some or all of a credit report from a consumer." *Cousin v. Trans Union Corp.*, 246 F.3d 359, 372 (5th Cir. 2001) (citations omitted); *see also Stafford*, 2025 WL 4648412, at *3 (concluding the plaintiff sufficiently stated a claim for a willful violation of the FCRA, where he alleged the omission of the tradeline information was the result of automated templates used by Equifax for annualcreditreport.com requests, which Equifax had known about for years and which had harmed other customers as well). "To assert a claim for willful noncompliance, a plaintiff does not need to prove actual damages." *Banks*, 2026 WL 628973, at *3 (citation omitted).

Here, Plaintiff alleges that Equifax has long known its automated systems—through www.annualcreditreport.com—omit account numbers, payment histories, and related account information from annual disclosures, that Equifax has knowingly continued the practice despite repeated consumer complaints, and that it has chosen not to correct the alleged defect. (ECF No. 1 at 11–14). Accepting the allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court concludes Plaintiff has plausibly alleged willful violations of the FCRA sufficient to survive dismissal.[6] *See Banks*, 2026 WL 628973, at *5; *Stafford*, 2025 WL 4648412, at *3.

## IV. Conclusion

Based on the foregoing, the Court **RECOMMENDS** Equifax's Motion to Dismiss (ECF No. 13) be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

---

[6] Whether Plaintiff can ultimately establish these allegations remains to be seen. The Court expresses no opinion regarding whether the evidence ultimately will satisfy the standard articulated in *Safeco*. That determination is to be made on a more developed record.

**SIGNED** in Houston, Texas on July 17, 2026.

Richard W. Bennett
United States Magistrate Judge